**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| GARY MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:04CV01729 ERW |
| ) | |
| RANDY CAMDEN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. #17].

**I. PROCEDURAL BACKGROUND**

On January 30, 2006, Defendant filed a Motion for Summary Judgment. After Plaintiff failed to respond, the Court issued an Order to Show Cause why the motion should not be granted. On March 2, 2006, Plaintiff filed a Motion for an Extension of Time to respond to Defendant's motion, and the Court granted the Motion on March 3, 2006. On April 3, 2006, Plaintiff filed his Response in Opposition to the Motion for Summary Judgment, but he did not attach a response to Defendant's Statement of Uncontroverted Facts. On June 29, 2006, this Court granted Plaintiff leave to file a response by July 10, 2006. The Court specifically noted that "Plaintiff shall specifically controvert Defendant's Statement of Uncontroverted Material Facts by identifying specific paragraph numbers in accordance with Eastern District Local Rule 4.01(E). If Plaintiff fails to do so, the Court will consider only the briefing already filed in this matter." In its entirety, Rule 4.01(E) states

1

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

On July 10, 2006, Plaintiff requested additional time to file his response. The Court granted, in part, Plaintiff's request. The Court instructed that any response had to be filed by July 17, 2006. On July 27, 2006, ten days after the response was due, Plaintiff filed another Motion for Extension to file his response. Counsel represented that he needed the additional time in order to prepare an affidavit of Plaintiff, who is an inmate at the St. Louis Community Release Center. The Court again granted Plaintiff's Motion and gave Plaintiff until July 31, 2006 to respond. Plaintiff filed his "Statement of Material Facts to Which a Genuine Issue Exists" ("Response") and "Plaintiff's Affidavit." The Response specifically controverts facts #8, 9, 10, 11, and 12 set forth in Defendant's Statement of Uncontroverted Facts. The responses refer back to "Plaintiff's Affidavit." The Court has reviewed the "Plaintiff's Affidavit" and found that it is not an affidavit at all. The document is not sworn, signed, dated or notarized.[1] *See* Fed.R.Civ.Proc. 56(e); 28 U.S.C. § 1746 (setting forth necessary elements of unsworn affidavit). The Court finds that Plaintiff has failed to specifically controvert Defendant's Statement of Uncontroverted Facts with

---

[1] "Affidavit" is defined in Black's Law Dictionary, 7th ed. as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." *See also Land Clearance for Redevelopment Authority of City of St. Louis v. Zitko*, 386 S.W.2d 69, 78-79 (Mo. 1965) (well established that unsigned affidavit is no affidavit at all).

evidence permitted under Fed. R. Civ. Pro. 56(e). Because Plaintiff failed to controvert the facts set forth by Defendant, those facts will be deemed admitted for the purposes of this Order. Thus, The Court's recitation of facts *infra* is taken largely from Defendant's Statement of Uncontroverted Material Facts.

## II. FACTUAL BACKGROUND

On March 30, 1998, while confined at the Farmington Correctional Center ("FCC"), Gary Moore ("Plaintiff") witnessed Darrell Pruitt, an inmate, violently assault another inmate named William Stroud. During the course of investigating the assault, Randy Camden ("Defendant"), an FCC investigator, interviewed Plaintiff. Before tape-recording Plaintiff's statement naming Pruitt as the assailant in the assault on Stroud, Defendant asked Plaintiff if he wished to have a confidential informant number and asked him if he was willing to testify against Pruitt in open court. Plaintiff stated that everybody knew why he was talking to the investigator, and that only he and another offender were present on the yard when Pruitt cut Stroud, and therefore, Pruitt would know who gave a statement against him. Plaintiff went on to say that he was not worried about anything that Pruitt might do to him because Plaintiff had been incarcerated a long time and had a lot of people who would watch his back. Therefore, Plaintiff declined receiving a confidential informant number and said he would testify against Pruitt in open court.[2] It was only after this conversation that Defendant turned on the tape recorder and began taping Plaintiff's statement.

Based, in part, on Plaintiff's statement, Defendant issued Pruitt a conduct violation report

---

[2]In Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that he requested his statement to be kept confidential, but, as the court has noted, Plaintiff has failed to controvert Defendant's Statement of Uncontroverted Material Facts pursuant to Local Rule 7-4.01(E), and the Court will accept Defendant's version of the facts as true.

3

("CVR") two days later, charging him with assaulting Stroud. The matter was also referred to the local prosecutor for criminal charges. Pruitt's CVR identified Plaintiff by his full name and prison number. The report states, in part: "The evidence which supports the conduct violation is: . . . A statement from Inmate Gary Moore #041439 identifying Inmate Pruitt as the assailant."

Roughly three months after Defendant disclosed Plaintiff's name to Pruitt, Moore was transferred from FCC to Algoa Correctional Center ("ACC"). At ACC, Plaintiff had a series of confrontations with Wayne Gregory[3], whose brother was one of Pruitt's associates. These confrontations caused Plaintiff to accumulate several CVR's of his own, resulting in the increase of Moore's security classification and his transfer to Moberly Correctional Center ("MCC"). Initially Plaintiff asked to be placed in protective custody at MCC because he knew an inmate named Lavell Nylon[4] to be one of Pruitt's associates. Some time later, Plaintiff signed an enemy waiver, and requested a transfer from protective custody to the general population. While in general population at MCC on August 1, 2000, inmates Lawrence Phillips (one of Pruitt's cousins) and Gregory Hill attacked Plaintiff. Phillips hit him in the back of the head with a typewriter, and Hill stabbed him five

---

[3]Plaintiff claims that Gregory had copies of Pruitt's CVR and Plaintiff's taped statement implicating Pruitt in the assault on Stroud. However, as noted above, this court must accept Defendant's versions of the facts as true, and Defendant insists that the audiotape of Plaintiff's statement is, and always has been, secured in the Investigator's Office outside the fence at FCC. According to Defendant, no copies have been made of that tape, so it is not possible for Pruitt or anyone else to have obtained one. The transcribed statement was provided to the St. Francois County Prosecutor when Pruitt was referred for prosecution for the assault. Thus, Defendant acknowledges that it is possible that Pruitt obtained a copy of the statement through his attorney when he was provided with disclosure, and Pruitt could have then copied and distributed the transcript.

[4]Plaintiff claims that Nylon had a copy of Pruitt's conduct violation report which listed Plaintiff as an informant, and Plaintiff alleges that he paid Nylon $150 for a copy of the report. However, once again, the Court accepts Defendant's version of the facts as true.

times.

Immediately after the assault, Plaintiff was transferred to Western Missouri Correctional Center ("WMCC") and placed in segregated confinement. On August 28, 2000, he was assigned to the general population. Immediately after being placed in general population, Plaintiff was threatend by inmates Gary Rollina and Tracy White, two of Pruitt's associates. On September 4, 2000, Rollina and White assaulted Plaintiff, breaking his shoulder.

After exhausting his administrative remedies, Plaintiff filed suit in this Court under 42 U.S.C. § 1983 on May 9, 2001, under case number 4:01CV00715ERW. In his suit, Plaintiff named fifteen defendants for various Eighth Amendment violations. All of Plaintiff's claims were eventually dismissed, except for his claim against Defendant Randy Camden for disclosing Plaintiff's identity on Pruitt's CVR. On December 12, 2003, this Court granted Plaintiff's Motion to Dismiss the case without prejudice. On December 13, 2004, Plaintiff filed the instant action, again under 42 U.S.C. § 1983, dealing with the same facts involved in the previous action and seeking damages in the amount of $50,000. Plaintiff's theory is that Defendant was deliberately indifferent to the serious risk that Plaintiff would be attacked following disclosure of his statement.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure

5

the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Hufsmith v. Weaver*, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit under governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 247-48). Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Crumley*, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, *quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *Crumley*, 324 F.3d at 1006 (citing *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. *Anderson*, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

6

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. *Crumley*, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. *Matsushita*, 475 U.S. at 586. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV.  DISCUSSION

Section 1983 provides a cause of action for individuals who have been "deprive[d] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983 (2000). Here, Plaintiff claims that Camden violated his right to be free from cruel and unusual punishments under the Eighth Amendment because of Camden's deliberate indifference to Plaintiff's safety.

Defendant claims that he is entitled to Summary Judgment based upon the merits or upon the defense of qualified immunity. Plaintiff survived Defendant's Motion for Summary judgment on the same grounds in his previous action. However, in the current action, as the Court has noted above, Plaintiff has failed to controvert Defendant's Statement of Uncontroverted Material Facts pursuant to Local Rule 7-4.01(E). Accordingly, the Court accepts Defendant's version of the facts as true, and, as outlined below Plaintiff's suit fails to survive Defendant's Motion for Summary Judgment.

### A.  **Qualified Immunity**

Defendant maintains that he is entitled to Summary Judgment because he is shielded from liability by the doctrine of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court established that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The Supreme Court recently explained that courts should undertake a two-part inquiry to determine whether an official is entitled to qualified immunity. The first question is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201; *Lockridge v. Board of Trustees of the University of Arkansas*, 315 F.3d 1005, 1008 (8th Cir. 2003). On the other hand, if a violation could be made on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established at the time of the state actor's conduct. *Saucier*, 533 U.S. at 201; *Shade v. City of Farmington*, 309 F.3d 1054, 1058-59 (8th Cir. 2002).

**1.      Eighth Amendment Claim**

To determine whether Plaintiff's allegations establish a constitutional violation, the Court turns to an analysis of Plaintiff's Eighth Amendment claim. It is well settled that the Eighth Amendment to the United States Constitution imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners. *Farmers v. Brennan*, 511 U.S. 825, 833 (1994). In *Farmers*, the Supreme Court explained, however, that prison officials are not constitutionally liable for every injury suffered by one prisoner at the hands of another. *Id*. at 834.

First, the deprivation alleged must be "sufficiently serious" under an objective analysis. *Id*. (internal citations omitted). For claims based on failure to prevent harm, an inmate must show that he is incarcerated under conditions posing an substantial risk of serious harm. *Id*. Second, the prison official must have a sufficiently culpable state of mind which, the *Farmers* Court held for prison-conditions cases, is one of "deliberate indifference" to inmate health or safety. *Id*. In *Farmers*, the Court defined the deliberate indifference standard, holding that a prison official could not be liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "unless the official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

To establish a an Eighth Amendment violation, Plaintiff must first show that Defendants' disclosure of Plaintiff's testimony created a substantial risk of harm.[5] Plaintiff argues that "any reasonable prison official would know that divulging the name of an inmate informer to a known violent inmate who that informer informed on would create a significant and likely risk to the informing inmates [sic] physical safety." Pl.'s Resp. to Def.'s Mot. for Sum. Judg. at 7-8. Violence amongst inmates is well established, particularly against prison informants, as demonstrated by the available prison procedure of providing confidential informant numbers for those inmates who give testimony against another inmate. Therefore, a jury could conclude that a reasonable person would

---

[5]Defendant argues that Plaintiff denied that he needed protective custody on numerous different occasions. *See* Def.'s Mem. in Supp. of Def.'s Mot. for Sum. Judg. at 6-9. However, Defendant's arguments concerning Plaintiff's subsequent declinations of protective custody are not relevant to this objective analysis. The test is whether a reasonable person would believe the risk to Plaintiff of suffering this type of retributive violence was sufficiently serious, not what Plaintiff subjectively believed the risk to be.

9

believe that the risk to Plaintiff of suffering retributive violence was sufficiently serious.

For the second step of Plaintiff's alleged Eighth Amendment violation, Plaintiff must show that Defendant subjectively knew of Plaintiff's substantial risk of harm and that Defendant was deliberately indifferent in disclosing Plaintiff's identity.[6] The *Farmers* Court clarified that a claimant need not show that a prison official acted or failed to act believing that harm would befall an inmate, recognizing that it is enough that the official acted or failed to act notwithstanding his knowledge of a substantial risk of serious harm. *Farmers*, 511 U.S.at 833. Defendant claims that "[b]ased on [his] conversation with [Plaintiff], [he] did not think that [Plaintiff] would be at risk of physical harm from offender Pruitt or other inmates." Camden Affidavit, Def.'s Ex. C ¶ 9. Defendant supports this claim with a series of alleged facts. First, on the day he interviewed Plaintiff, Defendant noticed that Plaintiff waited outside the investigator's office in full view of other offenders rather than scheduling a confidential meeting. Second, during the interview, Defendant asked Plaintiff if he wanted a confidential informant number and Plaintiff declined receipt of one. Finally, Plaintiff also told Defendant that he was willing to testify against Pruitt in open court. These facts, which the Court must accept as true, coupled with Plaintiff's failure to provide sufficient evidence to the contrary, lead the Court to conclude that Defendant is entitled to qualified immunity.

---

[6]Defendant's arguments concerning Plaintiff's subsequent declinations are not relevant to this subjective analysis either. Plaintiff is claiming that Defendant put him at risk by failing to protect the confidentiality of Plaintiff's identity as an informant versus Pruitt, not that Defendant failed to do anything to help Plaintiff in the days, months, or years down the road. Therefore, the only relevant consideration is Defendant's state of mind on the day he released Plaintiff's identity. Plaintiff's *ex post* subjective belief cannot negate Defendant's *ex ante* state of mind. In other words, Plaintiff's feelings following his identity disclosure do not obviate the possibility that Defendant was deliberately indifferent to a serious risk present on the day he disclosed Plaintiff's identity.

Plaintiff has failed to sufficiently allege an Eighth Amendment violation because he has not demonstrated that Defendant subjectively knew of a substantial risk to Plaintiff and then acted with deliberate indifference regarding that risk. As the Court noted above, the Court need not make any further inquiries concerning qualified immunity if a plaintiff's allegations fail to establish a violation of his constitutional rights. Therefore, the Court finds that Defendant is entitled to qualified immunity and Defendant's Motion for Summary Judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #17] is **GRANTED**.

Dated this 7th day of September, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE